UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-514-RJC-DSC

| | |
|---|---|
| RAFAEL ANTONIO GARCIA FLORES, ) ) Plaintiff, ) ) v. ) ) YOSELIN YESSENIA MORALES ) ALVARADO, CARMEN LUCIDNA ) ALVARDO, and DAVID ALVARDO ) ) Defendants. ) _____ ) | ORDER |

**THIS MATTER** comes before the Court on Rafael Flores' Complaint Petitioning for the Return of a Minor Child Under the Hague Convention, (Doc. No. 1). The Court held an Evidentiary Hearing on April 12, 2018. At that hearing, the Court found that Petitioner established by preponderance of the evidence a *prima facie* case warranting the return of V.S.G.M., a minor ("the Child"), to El Salvador pursuant to the Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act. Respondent failed to establish by clear and convincing evidence an affirmative defense proving a grave risk of harm to V.S.G.M. The Court ordered both parties to confer with each other and attempt to resolve the details of V.S.G.M.'s return to El Salvador. In the meantime, Respondent was prohibited from removing V.S.G.M. from the jurisdiction of this Court. The parties have since presented the Court with a status report detailing the Child's travel arrangements. (Doc. No. 28).

1

I. BACKGROUND

   A. Procedural Background

On August 25, 2017, Rafael Antonio Garcia Flores ("Petitioner") filed his Complaint Petitioning for the Return of a Minor Child Under The Convention on the Civil Aspects of International Child Abduction ("Hague Convention"). (Doc. No. 1). On October 23, 2018, Yoselin Yessenia Morales Alvarado filed a Motion to Dismiss for Failure to State a Claim, (Doc. No. 8), which the Magistrate Judge recommended this Court deny in his Memorandum and Recommendation ("M&R"), (Doc. No. 10). In his M&R, the Magistrate Judge recognized a narrow exception to the Hague Convention under Article 13(b), which "allows a court to deny return of a child to the habitual residence if 'there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.'" (Id. at 4). The Magistrate Judge then concluded that "Petitioner has properly pled a claim under the Hague Convention" and that "Respondent's affirmative defense that the Child is in 'grave risk' must be resolved at an evidentiary hearing to determine the rights of the parties under the Hague Convention." (Id.). The Court adopted the Magistrate Judge's recommendation, (Doc. No. 21), having previously set an evidentiary hearing for April 12, 2017. At the hearing, Respondent testified in person while Petitioner testified remotely via video conference.[1]

---

[1] The Court granted Petitioner's Motion to Testify Remotely, (Doc. No. 17), on the condition that he testify in a private room, free from outside influence. (Doc. No. 22).

B. Factual Background

Petitioner and Respondent married in El Salvador in December of 2012. (Doc. No. 1 ¶ 14). In 2013, Respondent gave birth to a child in San Salvador, El Salvador. (Id. ¶ 15). As Petitioner tells it, he lived with Respondent and Child in a familial residence in El Salvador until Respondent left with the Child in January of 2017. (Id. ¶16). When Respondent left, she originally told Petitioner that she and the Child were going to stay with her aunts for a week in La Union, El Salvador. (Id. ¶ 18). The truth, however, was that Respondent took the Child to the United States after disconnecting her cell phone. (Id. ¶¶ 19–20). Petitioner found out Respondent's location after receiving a video showing her crossing the United States border with the Child. (Id. ¶ 20). Petitioner promptly filed an abduction report to the local authorities. (Id. ¶ 21). Petition has spoken to Respondent approximately four time before she broke off communication. (Id. ¶ 23). Petitioner and Respondent remain married today and no court in either El Salvador or the United States has entered an order regarding custody. (Id. ¶ 23–25).

Respondent, in her Motion to Dismiss, emphasized the fact that no custody order awarded Petitioner custody over the minor child. (Doc. No. 8 at 1). Therefore, Respondent argues that Petitioner cannot prove a "breach of rights of custody" under the Hague Convention. (Id. at 2). Respondent also alludes to a claim in North Carolina State Court where she seeks custody over her child. (Id. at 3). In that case, Respondent alleges Petitioner uses illegal drugs and engaged in abusive behavior.

(Id.). It is this behavior, Respondent argues, that creates a grave risk of harm warranting this Court to find in her favor and keep her child in the United States.

Prior to the hearing, the Parties have stipulated to the following facts:

1. All parties are properly before the court.
2. The Court has jurisdiction of the parties and of the subject matter.
3. All parties have been correctly designated.
4. There is no question as to misjoinder or non-joinder of parties.
5. V.S.G.M. (the "Child") was born on January 29, 2013.
6. Petitioner Rafael Antonio Garcia Flores is the Child's father as is noted on the Child's birth certificate.
7. The Child is under sixteen years of age.
8. The Child was removed from El Salvador to the United States on or about on or about January 8, 2017.
9. The Petitioner filed this petition on August 25, 2017, which is within one year of the Child's removal from El Salvador.

(Doc. No. 18). At the hearing, the parties also stipulated that the Minor's habitual residence is in El Salvador. (Transcript of Evidentiary Hearing ("T.") at 9).

## II. DISCUSSION

The Hague Convention aims to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Hague Convention, Art. 1. Accordingly, the Convention secures the prompt return of children wrongfully removed to or retained in another Contracting State. Id. The United States has signed the Convention as a

4

Contracting State and subsequently codified its obligations in the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001, *et seq.*[2]

The Court's duties do not involve the substantive underlying custody battle between Petitioner and Respondent. Rather, the Court is simply charged with the jurisdictional inquiry of what country should determine the custody over a minor. The general rule is that a child must be returned to the country of their habitual residence. Accordingly, the issue can be reframed as, "whether the child has been wrongfully removed or retained from his or her habitual residence." Salguero v. Argueta, 256 F. Supp. 3d 630, 635 (E.D.N.C. 2017).

The Hague Convention does not define "habitual residence." Id. However, the parties have stipulated that the Child's habitual residence is in El Salvador. (T. 9). Even so, determining the venue of the Child's custody determination takes the form of a two-step process. First, Petitioner must establish a *prima facie* case by showing with a preponderance of evidence that:

1) the respondent wrongfully removed or retained the child from the place of her habitual residence;

2) the removal or retention breached the petitioner's custody rights, as determined by the law of the place of habitual residence; and

3) petitioner was exercising his parental custody rights at the time the child was wrongfully removed or retained.

Hague Convention, art. 3; Salguero, 256 F. Supp. 3d at 635 (citing Miller, 240 F.3d at 398). In analyzing the third element above, the Fourth Circuit has noticed that the Hague Convention fails to define "exercise." In resolving this issue, the Fourth

---
[2] Formerly 42 U.S.C. §§ 11601–11610.

5

Circuit has previously found that courts should "liberally find 'exercise' whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." Bader v. Kramer, 484 F.3d 666, 671 (4th Cir. 2007) (quoting Friedrich v. Friedrich, 78 F.3d 1060, 1065 (6th Cir.1996)). "Under this approach, 'a person [who] has valid custody rights to a child under the law of the country of the child's habitual residence ... cannot fail to "exercise" those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child.'" Id. (quoting Friedrich, 78 F.3d at 1065–66).

At the second step of the inquiry, the Court will analyze any affirmative defenses presented by Respondent. These defenses act as the exception to the general rule of returning a child to his or her country of habitual residence. The exceptions at issue here derive from Article 13,[3] which states:

> [T]he judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –
>
> a) the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or
>
> b) there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.
>
> The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and

---

[3] Article 20 adds one more exception. "The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms." Hague Convention, art. 20.

6

> has attained an age and degree of maturity at which it is appropriate to take account of its views.
>
> In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

Hague Convention, art. 13. Of the three exceptions found within Article 13, Respondent attempts to establish her defenses under Article 13(a) and (b) by alleging that: (1) Petitioner was never granted custodial rights over the minor; and (2) a risk of grave harm exists if the Child were to return to El Salvador. (Doc. No. 8).

The first defense, Article 13(a), "provides that a child may not be returned if the removing parent proves, by a preponderance of the evidence, that the petitioner was not actually exercising his custodial rights at the time of the removal or had consented to or acquiesced in the removal." Bader, 484 F.3d at 672; see also 22 U.S.C. § 9003(e). This affirmative defense is simply the converse of the third necessary element that Petitioner must prove to establish his *prima facie* case. See Hague Convention, art. 3 (requiring petitioners to prove petitioner was exercising his parental custody rights at the time the child was wrongfully removed or retained).

The second defense, Article 13(b), contains a more complex analysis. Unlike the Article 13(a) defense undermining the exercise of parental custody rights, the Article 13(b) grave risk defense must be proven by clear and convincing evidence.

Salguero, 256 F. Supp. 3d at 635 (citing Miller, 240 F.3d at 402).[4]  The Fourth Circuit assessed the grave risk of harm defense, stating:

> courts in the abducted-from country are as ready and able as we are to protect children. If return to a country, or to the custody of a parent in that country, is dangerous, we can expect that country's courts to respond accordingly.... When we trust the court system in the abducted-from country, the vast majority of claims of harm—those that do not rise to the level of gravity required by the Convention—evaporate.

Miller, 240 F.3d at 402 (quoting Friedrich, 78 F.3d at 1068)).  A district court in the Eastern District of North Carolina analyzed this defense further, stitching together the findings of courts in other circuits.

> '[T]he grave risk inquiry should be concerned only with the degree of harm that could occur in the immediate future.' Gaudin v. Remis, 415 F.3d 1028, 1037 (9th Cir. 2005); see also Alcala v. Hernandez, No. 4:14–CV–04176, 2015 WL 4429425, at *15 (D.S.C. July 20, 2015), aff'd, 826 F.3d 161 (4th Cir. 2016). 'Furthermore, the risk of harm must be grave, which is a great deal more than minimal.' Walsh v. Walsh, 221 F.3d 204, 218 (1st Cir. 2000); see also Friedrich v. Friedrich, 78 F.3d 1060, 1068 (6th Cir. 1996); Nunez–Escudero v. Tice–Menley, 58 F.3d 374, 377 (8th Cir. 1995). 'The gravity of a risk involves not only the probability of harm, but also the magnitude of the harm if the probability materializes.' Van De Sande v. Van De Sande, 431 F.3d 567, 570 (7th Cir. 2005).

Salguero, 256 F. Supp. 3d at 636–37.  The court went on to say that the grave risk of harm defense is applicable in only two situations: 1) "where return of the child puts the child in imminent danger prior to the resolution of the custody dispute—e.g., returning the child to a zone of war, famine, or disease"; and 2) "in cases of serious

---

[4] The affirmative defenses of Article 13(b) and Article 20 require clear and convincing evidence while any other affirmative defenses, such as Article 13(a), require a preponderance of evidence.  22 U.S.C. § 9003(e)

abuse or neglect, or extraordinary emotional dependence." Id. (citing Friedrich, 78 F.3d at 1069 and Miller, 240 F.3d at 398).

A. Petitioner's Prima Facie Case

At the hearing, the Court found that Petitioner succeeded in establishing his *prima facie* case by a preponderance of the evidence. The parties' stipulated that the Minor's habitual residence is El Salvador. (T. 9). Petitioner, therefore, carried the burden to prove that he was exercising his parental custody rights when Respondent wrongfully removed the minor, resulting in a breach of those rights.

Unlike "habitual residence," the Convention does define "rights of custody." Such rights include those "relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Convention, art. 5(a). To determine Petitioner's rights of custody, the Court must look to "the law of the State in which the child was habitually resident immediately before the removal or retention."

At the hearing, Plaintiff pointed to El Salvador's Family Code. (T. 10, 73). Under Articles 206 and 207 of Title II of the Family Code, the parents of a child share parental authority jointly. (Doc. No. 8-1 at 2). Petitioner presented the minor's birth certificate, which lists both Petitioner and Respondent as parents and therefore evidences the presumption of Petitioner's parental rights under El Salvadorian law. (Doc. No. 1-4).

After establishing the existence of his custodial rights, Petitioner then argued that he was exercising those rights before Respondent took the minor from the country. At the hearing, Petitioner testified,

> I would be worried, you know, making sure that he lacked nothing at home, take care of his well being. If he was sick I would take him to the hospital. And in my spare time I would try to dedicate it to him as much as possible. We would play together and watch TV. And all his vacations I would spend them with him.

(T. 13). Petitioner could also identify his son's interests, such as painting, drawing, dancing, running, and playing. (T. 14–15). Petitioner could identify the school his son attended, that his son had friends that lived near their home, and that his son's room was painted yellow because it was his favorite color. (T. 15). While Petitioner mentioned that family members, and later a nanny, would help care for his son, (T. 16), his testimony established that he was exercising his parental rights prior to the Child's removal.

### B. Respondent's Affirmative Defense

At the hearing, the Court found that Respondent failed to prove an affirmative defense under the Convention's grave risk exception or failure-to-exercise-custody exception. Respondent presented no other evidence besides her own testimony and what allegations she posited were more geared to the best interest of the Child rather than the relevant query before the Court.

#### 1. Article 13(a)—Failure to Exercise Custody Rights

Respondent's that no custody order granted Petitioner custody rights over the Child. However, Petitioner successfully refutes this argument. As mentioned above,

under El Salvador law, the parents of a child share custody jointly unless a custody order finds otherwise. Family Code, arts. 206, 207. Respondent admits that no custody order exists that alters the default joint custody rule. As such, Respondent's argument cut against the very assertion she attempted to make.

Respondent also argued that she and Petitioner were separated at the time of the Child's removal, but the Court found that there was a dispute as to if such a separation existed. (T. 84). If the parties were separated, it seemed to have been for a short period of time during which both Petitioner and Respondent seemed to exercise custodial rights. (Id.).

Respondent also asserted that Petitioner did not provide as much care for the child as she did. (T. 36–37). Respondent claimed that Petitioner had a "phobia" when it came to taking care of the child. (T. 36). She stated that he would not change his diapers or get up if the child cried during the night. (T. 37). While Petitioner's care for the Child may not have been exemplary, that does not determine that he failed to exercise his parental rights. The Court found that, from Respondent's point of view, Petitioner may not have provided as much physical care for the child, but he did provide in other ways including economically. (T. 68, 82). In all, no evidence indicated that Petitioner acted in a way that "constitute[d] clear and unequivocal abandonment of the child." Bader, 484 F.3d at 671 (quoting Friedrich, 78 F.3d at 1065–66).

    2. Article 13(b)—Grave Risk of Physical or Psychological Harm to the Child

Respondent also argued that returning the Child to El Salvador constituted a grave risk of physical or psychological harm. Respondent pointed alleged that Petitioner habitually smoked marijuana and drank heavily around the Child. (T. 38–39, 40). At one point, Respondent claimed that the Child was caught with a bag of marijuana in his mouth. (T. 40). Respondent also claimed that Petitioner endangered the Child by drinking and driving with him in the car. (T. 39). At least once, Respondent stated that the Child was in the car when Petitioner was involved in a minor car accident. (T. 39–40). Finally, Respondent claimed that Petitioner would argue with her and began kicking her out of the house. (T. 41). Respondent states that Petitioner would "violently" remove her from the hoes when she refused to go without her son. (T. 42).

The Court found Respondent's claims general and unsubstantiated. Respondent provided no other evidence besides her word, which the Court found less than credible. While Respondent stated that neighbors and a nanny witnessed the violence Petitioner subjected her to, she presented none of these parties as witnesses during the hearing. (T. 42). Respondent admitted that Petitioner showed no physical violence toward the Child. (T. 67). Any other complaints Respondent has against Petitioner's care for the child are issues that are well within the bailiwick of the courts in El Salvador.

In the end, the Court was faced with Respondent's testimony of drug and alcohol use against Petitioner's testimony of a happy family that was abruptly separated by Respondent's wrongful removal of the Child. Respondent faced a higher

12

evidentiary standard than Petitioner and quite simply failed to produce sufficient evidence to corroborate her claims.

C. <u>Payment of Fees and Costs</u>

Under the ICARA,

> [a]ny court ordering the return of a child … shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. §9007(b)(3). The Court must therefore award Petitioner fees and costs unless Respondent could show that such an award "would be clearly inappropriate." While the Court finds that Respondent is liable for these costs, the parties have agreed to split these costs in their finalized travel arrangements as described in their Fourth Joint Status Report. (Doc. No. 28). This report states:

1. The Parties agree that the Child's uncle, Alfonso Maldonado (the "Uncle"), … will travel with and accompany the Child from Charlotte, North Carolina to San Salvador, El Salvador.

2. The Uncle is prepared to accompany the Child from Charlotte, North Carolina to Atlanta, Georgia on Delta Airlines DL 823 on August 17, 2018. This flight leaves Charlotte, North Carolina at 6:00 EDT and lands in Atlanta, Georgia at approximately 7:07 EDT. From Atlanta, Georgia, Mr. Alvarado will accompany the Child to San Salvador, El Salvador on Delta Airlines DL 872 on August 17, 2018. This flight leaves Atlanta, Georgia at 9:48 EDT and lands in San Salvador, El Salvador at approximately 11:26

13

CST.

3. The Parties have agreed to split the payment of the Child's ticket to San Salvador. Mr. Garcia shall pay 75% while Mrs. Morales shall pay 25%.

4. The Uncle shall pay for his own travel arrangements.

5. Mr. Garcia hereby waives his right to any attorney's fees and costs pursuant to pursuant to Article 26 of the Hague Conventions on the Civil Aspects of International Child Abduction.

(Id.). The Court commends the parties for their work in resolving the details for the prompt return of the Child and **APPROVES** their finalized travel arrangements as laid out in their status report, (Doc. No. 28).

III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Rafael Antonio Garcia Flores' Petition for Return of Minor Child Under the Hague Convention, (Doc. No. 1), is **GRANTED;**

2. The Parties' arrangements for the prompt return of the child, (Doc. No.28), are **APPROVED**; and

3. The Clerk of Court is directed to close this case.

Signed: August 3, 2018

Robert J. Conrad, Jr.
United States District Judge